# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-0463V**

|  |  |
|---|---|
| CHRISTOPHER JAMES, | Chief Special Master Corcoran |
| Petitioner, | Filed: June 13, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*William E. Cochran, Jr., Black McLaren, et at., P.C., Memphis, TN, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM[1]

On April 22, 2022, Christopher James filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1 Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") following a Tdap vaccine he received on August 31, 2020, and an MMR vaccine he received on September 9, 2020. Amended Petition at 1 (ECF No. 18). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Because Petitioner cannot succeed on a Table SIRVA claim for the administration of the MMR vaccine, and the record does not support the conclusion that Petitioner suffered the onset of pain within 48 hours after his earlier August 31, 2020 vaccination, Petitioner's Table SIRVA claim must be dismissed (although this may leave a causation-in-fact claim to be adjudicated).

## I.      Relevant Procedural History

After reaching an impasse during brief settlement discussions, Respondent filed a Rule 4(c) Report on November 30, 2023, in which he argued that Petitioner has not provided preponderant evidence for a Table SIRVA for either at-issue vaccinations. ECF No. 33. I subsequently ordered the parties to brief the issue of entitlement. Petitioner filed his Motion for Ruling on the Record ("Mot.") on December 15, 2023. ECF No. 34. Respondent filed a response ("Resp.") on February 14, 2024, and Petitioner filed a reply ("Repl.") on February 21, 2024. ECF No. 36, 41. Respondent argues that the September 2020 MMR vaccine was administered subcutaneously, and that Petitioner has not provided preponderant evidence that his pain began within 48 hours after his receipt of the Tdap vaccine. Resp. at 9-13. The matter is now ripe for decision.

## II.      Relevant Factual History

Petitioner received a Tdap vaccine, administered intramuscularly, in his left arm on August 31, 2020. Ex. 2 at 41. Petitioner has maintained that he had "intense shoulder pain" and difficulty raising his arm within 24-48 hours after vaccination. Ex. 9 at ¶5. Petitioner's wife recalled him complaining of left shoulder pain "a day or two after the first vaccine." Ex. 10 at ¶5.

Petitioner then received an MMR vaccine, administered subcutaneously, in his left arm nine days later - on September 9, 2020. Ex. 2 at 41. Petitioner states that he informed treaters of his left shoulder pain during his visit for the MMR vaccine, but was told that it was "not unusual" and "could last up to three weeks." Ex. 9 at ¶5. The record of the September 9, 2020 visit does not reflect any reports of left shoulder pain. Ex. 2 at 112. Petitioner's wife has stated that Petitioner "was reluctant to get the second vaccine, but these were required for immigration," and that his "left shoulder pain got worse after the second vaccine." Ex. 10 at ¶6-7.

On October 28, 2020 (58 days after the Tdap and 49 days after the MMR), Petitioner returned to his primary care provider ("PCP") for left shoulder pain. Ex. 2 at 45. The chief complaint was recorded as "side effect of MMR injection." *Id*. Petitioner reported that he had "been having symptoms since shortly after" his "MMR vaccine on 09/09/20." *Id*. at 46. He reported no symptoms prior to vaccination, and did not mention any adverse effects of receipt of the Tdap vaccine at the end of August. *Id*.

2

On December 1, 2020, Petitioner began physical therapy. Ex. 3 at 27. The date of onset for his alleged vaccine injury is recorded in records associated with this PT visit as "09-01-20." *Id*. Petitioner reported "onset of left shoulder pain following vaccines, including one for MMR which he received in Sept." *Id*. On the handwritten intake form from the visit, Petitioner wrote that his pain began in "Sept 2020." *Id*. at 10. He further explained that he "started feeling pain in [his] shoulder/arm after taking MMR vaccine." *Id*.

Petitioner returned to his PCP on December 22, 2020, with continued complaints of left arm pain. Ex. 2 at 43. The record states "h/o MMR vaccine on 09/09/2020, after which patient had lingering pain in the left posterior upper arm." *Id*. at 44. Petitioner again saw his PCP on February 12, 2021, the record of which has the same language as the previous record. *Id*. at 40-41.

Petitioner retuned to physical therapy for another evaluation on March 9, 2021. Ex. 3 at 63. The date of onset was recorded as "08-31-20" "after vaccine(s) received" that day. *Id*. On the handwritten intake form Petitioner completed at that visit, he wrote "September 2020 8/31/20 – 1st vaccine" in response to the question regarding the onset of his condition. *Id*. at 12.

On April 19, 2021, Petitioner was evaluated by an orthopedist. Ex. 4 at 18. He reported left shoulder pain "since receiving a vaccination last year." *Id*. He further explained that he had "felt severe shoulder pain since receiving his second dose which restricts his motion." *Id*.

Petitioner returned to the orthopedist's office for an EMG/NCS on June 30, 2021. Ex. 12 at 5. The record states that Petitioner complained of "immediate" pain after a TDAp [sic] injection last fall" that worsened to include numbness, tingling, weakness, and loss of motion *Id.*

Petitioner began a third course of physical therapy on September 30, 2021. Ex. 3 at 196. The date of onset was recorded as "09-01-20." *Id*. He reported that he had had shoulder pain, reduced range of motion, and weakness since the "first week of September." *Id*.

Petitioner began a fourth course of physical therapy on January 20, 2023. Ex. 14 at 34. The date of onset was recorded as "09-01-20." *Id*. He reported that "in 2020 he received TDAP and MMR vaccine in left shoulder and since then has experienced severe left shoulder pain." *Id*. On the handwritten intake form completed by Petitioner on that date, he wrote that the problem began on "09/__/2020." *Id*. at 4. Petitioner also wrote that he had "immense pain after TDAP/MMR vaccine." *Id.*

There are no additional records that are relevant to the question of onset.

### III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569

4

F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV.    Findings of Fact

### A.  MMR Vaccine

Respondent argues that Petitioner cannot succeed on "a Table SIRVA claim with respect to his September 9, 2020 MMR vaccination, as the vaccine administration record indicates that Petitioner's MMR vaccine was administered subcutaneously." Resp. at 9. Petitioner states that "Respondent does not cite any case law to support this proposition," and that his argument "is erroneous and inconsistent with the Vaccine Injury Table, which includes SIRVA as at able injury for MMR." Repl. at 5.

It is well settled in the Vaccine Program that Table SIRVA claims require *intramuscular* administration of the covered vaccine, not subcutaneous. *See* 42 C.F.R. § 100.3(c)(10); *A.P. v. Sec'y of Health & Human Servs.*, No. 17-0784V, 2022 WL 275785, *13-15 (Fed. Cl. Spec. Mstr. Jan. 31, 2022). *See also Byndloss v. Sec'y of Health & Human Servs.* No. 20-0781V, 2024 WL 3277098, at *7 (Fed. Cl. Spec. Mstr. May 16, 2024); *Rissler v. Sec'y of Health & Human Servs.*, No. 18-1208V, 2021 WL 5226496 at fn.22 (Fed. Cl. Spec. Mstr. Oct. 25, 2021). Because Petitioner's MMR was administered subcutaneously, it cannot be the basis for a Table SIRVA claim. Ex. 2 at 41.

### B. Onset After Tdap Vaccine Administration

Respondent next argues that 48-hour onset cannot be established because "Petitioner consistently attributed his left shoulder pain to the MMR vaccine," rather than the Tdap vaccine. Resp. at 12. Petitioner counterargues that Petitioner's "medical records repeatedly corroborate the fact that Petitioner's pain started with the Tdap vaccine." Repl. at 2-5.

Admittedly, the standard applied to resolving onset for an alleged Table SIRVA is liberal, and will often permit a determination in a petitioner's favor, even in the *absence* of fairly contemporaneous and direct statements within the petitioner's medical records regarding onset. But not every case can be so preponderantly established. Ultimately, the resolution of such fact issues involves weighing different items of evidence against the overall record.

In this case, there *are several* records, including those that are most contemporaneous to vaccination, attributing onset of Petitioner's pain to his *MMR vaccine* in September, rather than his Tdap vaccine in August. For example, at the first visit with a PCP for shoulder pain (on October 28, 2020), Petitioner reported that he had "been having symptoms since shortly after" his "MMR vaccine on 09/09/20." Ex. 2 at 46. Then, at the next appointment with physical therapy on December 1, 2020,[3] Petitioner handwrote on the intake form that he had "started feeling pain in [his] shoulder/arm after taking MMR vaccine." Ex. 3 at 10. The records of Petitioner's next two appointments with his PCP (on December 22, 2020 and February 12, 2021) continue to link the start of his pain with his MMR vaccine, even identifying it by date. *See* Ex. 3 at 40-41, 44 ("h/o MMR vaccine on 09/09/2020, after which patient had lingering pain in the left posterior upper arm.").

The first time Petitioner linked the onset of his pain to the earlier Tdap vaccine was on March 9, 2021 (six months after both vaccinations) when he began his second course of physical therapy. Ex. 3 at 12. 63. Even then, however, he stated that onset was "Sept 2020" – with an additional notation of "08-31-20 – 1st vaccine." *Id*. at 12. On April 19, 2021, Petitioner linked the onset of his pain after the "second dose" of vaccine he received – suggesting that he was referring to the later MMR. Ex. 4 at 18. Further, even after Petitioner began to attribute his pain to his Tdap vaccine, his reports regarding onset were not sufficiently specific to overcome the earlier records establishing onset after the MMR vaccine. *See e.g.*, Ex. 3 at 196 (Petitioner reported that he had had shoulder pain,

---

[3] Petitioner points to this record in support of his onset argument because the medical record itself indicates that the date of onset was September 1, 2020 and because it references "*vaccines*, including one for MMR." *See* Repl. at 3 (emphasis added); Ex. 3 at 27. But the associated form handwritten by Petitioner indicated onset as "Sept 2020," without an identified day, and specifically referenced the MMR vaccine. Ex. 3 at 10.

reduced range of motion, and weakness since the "first week of September."); Ex. 14 at 4 (Petitioner handwrote that the problem began on "09/__/2020" and that he had "immense pain after TDAP/MMR vaccine."); Ex. 14 at 34 (He reported that "in 2020 he received TDAP and MMR vaccine in left shoulder and since then has experienced severe left shoulder pain."). In fact, only one record (and Petitioner's affidavit) indicates immediate pain after the Tdap vaccination. *See* Ex. 12 at 5.

Petitioner has attempted to explain these factual discrepancies – arguing, for example, that he told his PCP about his existing shoulder pain when he returned on September 9, 2020 to get the MMR vaccine. Mot. at 7; Repl. at 4; Ex. 9 at ¶5. Petitioner maintains that the lack of a "clinical encounter summary" for that appointment "does not negate the report of left shoulder pain nor does it negate the existence of shoulder pain. Repl. at 4. Yet Petitioner does not attempt to explain why he received the MMR vaccine in the same arm if he were experiencing "intense pain and discomfort in the area the first vaccine was administered." *See* Ex. 9 at ¶5. And Petitioner does not attempt to explain why he reported the onset of his pain after receipt of the MMR vaccine at his subsequent medical appointments.

There are situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate, or where the witness statement provides additional detail or amplifies a record silent on a topic. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (*quoting Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). But here, the testimony of Petitioner is not sufficiently consistent nor compelling to outweigh the contemporaneous medical records.

Accordingly, I find Petitioner has not preponderantly established that onset of his pain occurred within 48 hours of his Tdap vaccination – meaning that he cannot proceed in this action with a Table SIRVA claim. It remains possible, however, that Petitioner could sustain a non-Table claim involving some kind of neurologic injury to his shoulder associated with his vaccinations, and therefore the matter is appropriately transferred for that purpose.

## Conclusion

Because I find that Petitioner cannot sustain a Table SIRVA claim after a subcutaneous MMR vaccination, and that he has not provided preponderant evidence that his pain began within 48 hours of his Tdap vaccination, Petitioner's Table SIRVA claim is dismissed. The case will be reassigned to a Special Master outside of the SPU for adjudication as a causation-in-fact claim.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master